**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **BORMIO INVESTMENTS, INC.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:15-CV-1888-M** |
| | § | |
| **WELLS FARGO BANK, N.A.,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order No. 3-251, this case was automatically referred for pretrial

management.  Before the Court for recommendation is *Defendant's Motion to Dismiss Plaintiff's*

*Original Petition and Brief in Support*, filed June 8, 2015 (doc. 3).  Based on the relevant filings and

applicable law, the motion should be **GRANTED.**

**I.  BACKGROUND**

This case involves the foreclosure of real property located at 9126 Valley Chapel Lane,

Dallas, Texas 75220 (the Property).  (*See* doc.  1-3 at 4.)[1]  On May 4, 2015, Bormio Investments,

Inc. (Plaintiff), filed this action in state court against Wells Fargo Bank, N.A. (Defendant)[2].  (*See*

*id*.)  On June 1, 2015, Defendant removed the action to federal court on the basis of diversity

jurisdiction under 28 U.S.C. § 1332.  (doc. 1.)

Plaintiff alleges that the Property was the homestead of Bruce and Donna Yamini

(Borrowers). (doc. 1-3 at 4.) On October 17, 2002, Borrowers refinanced the Property and executed

---

[1]Citations to the record refer to the CM/ECF system page number at the top of each page rather than the
page numbers at the bottom of each filing.

[2] Defendant contends that its correct name is Wells Fargo Bank, N.A., successor by merger to Wells Fargo
Bank Minnesota, National Association as trustee for First Franklin Mortgage Loan Trust 2002-FF4 Asset Backed
Certificates, Series 2002-FF-4.  (*See* doc. 3 at 8 n. 1.)

a note for a home equity loan from First Franklin Financial Corporation in the amount of $257,000.00.  (doc. 1-3 at 4; doc. 3-1 at 2-3.)  They also executed a Texas Home Equity Security Instrument (First Lien), which secured payment of the note.  (doc. 1-3 at 4; doc. 3-1 at 3.)  Plaintiff alleges that the amount of the note was more than 80 percent of the fair market value of the Property, and that Borrowers were charged more than "3 [percent] to originate, evaluate, maintain, record, insure, or service the extension of credit." (doc. 1-3 at 4.)  Plaintiff alleges that Borrowers "tendered written notice to defendant on May 29, 2011 in accordance with Texas Constitution Art. XVI, § 50(a)(6)(Q)(x)."  (*Id.*)  Defendant did not respond and attempted a forced sale of the Property by filing a Notice of Foreclosure.  (*Id.*)  Plaintiff contends that it has purchased the Property and is the current owner, and it seeks actual and statutory damages as well a declaratory judgment.  (*Id*. at 6.)

On June 6, 2015, Defendant moved to dismiss Plaintiff's complaint.  (*See* doc. 3.)

## II.  RULE 12(b)(6) MOTION

Defendant moves to dismiss Plaintiff's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  (doc. 12.)

### A.     Legal Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule 12(b)(6) are disfavored and rarely granted.  *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings.  *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).  Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal.  *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept

those well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Baker*,

75 F.3d at 196.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual

proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted).  Nevertheless, a plaintiff must

provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of

action will not do."  *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that

"the tenet that a court must accept as true all of the allegations contained in a complaint is inap-

plicable to legal conclusions").  The alleged facts must "raise a right to relief above the speculative

level."  *Twombly*, 550 U.S. at 555.  In short, a complaint fails to state a claim upon which relief may

be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."

*Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows
> the court to draw the reasonable inference that the defendant is liable for the miscon-
> duct alleged.  The plausibility standard is not akin to a "probability requirement," but
> it asks for more than a sheer possibility that a defendant has acted unlawfully.
> Where a complaint pleads facts that are "merely consistent with" a defendant's liabil-
> ity, it "stops short of the line between possibility and plausibility of 'entitlement to
> relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted).  When plaintiffs "have not nudged their claims across

the line from conceivable to plausible, their complaint must be dismissed."  *Twombly*, 550 U.S.

at 570; *accord Iqbal*, 556 U.S. at 678.

As noted, a court cannot look beyond the pleadings in deciding a 12(b)(6) motion.  *Spivey*,

197 F.3d at 774; *Baker*, 75 F.3d at 196.  "Pleadings" for purposes of a Rule 12(b)(6) motion include

attachments to the complaint.  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.

2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  Likewise,

3

documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to her claim[s]." *Collins*, 224 F.3d at 499 (quotations omitted); *accord Benchmark Elecs.*, 343 F.3d at 725. It is also "clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994).

Defendant attaches to its motion a copy of the deed of trust. (doc. 3-1.) The deed of trust is referenced in Plaintiff's complaint, so it is considered part of the pleadings. It is also a matter of public record that can be judicially noticed in considering a Rule 12(b)(6) motion. *See* Fed. R. Evid. 201(b)(2); *Matter of Manges*, 29 F.3d 1034, 1042 (5th Cir. 1994) (taking judicial notice of "unimpeached certified copies of ... deeds and assignments"). Because the deed of trust is part of the pleadings and subject to judicial notice, it may be considered without conversion of Defendant's motion into a motion for summary judgment. *See Norris*, 500 F.3d at 461 n.9.

## B.   Claims for Violation of Section 50(a)(6)

Defendant seeks dismissal of Plaintiff's claims under Article XVI, § 50(a)(6) of the Texas Constitution,[3] based on the statute of limitations. (doc. 3 at 12-15.)

Plaintiff contends Defendant violated § 50(a) of the Texas Constitution by attempting a forced sale of the Property, and that the sale was forced because the debt that formed the basis of

---

[3] Article XVI, § 50(a)(6) of the Texas Constitution places numerous restrictions on home mortgages. In particular, subsection 50(a)(6)(B) prohibits loans that, when added to the principal balances of all other liens, exceed 80 percent of the home's fair market value. Tex. Const. Ann. art. XVI, § 50(a)(6)(B). Subsection 50(a)(6)(E) prohibits a lender from requiring the borrower "to pay, in addition to any interest, fees ... that are necessary to originate, evaluate, maintain, record, insure, or service the extension of credit that exceed, in the aggregate, three percent of the original principal amount." *Id.* § 50(a)(6)(E). A debtor may give the lender notice of a constitutional violation, and the lender has 60 days to cure it. *Id.* § 50(a)(6)(Q)(x). If the lender fails to correct a defect during the 60-day window, it forfeits all principal and interest on the loan. *Id.*

4

the foreclosure action was not obtained for a purpose allowed by § 50(a).  (doc. 1-3 at 5.)  It

contends that the amount of the note was more than 80 percent of the fair market value of the

Property, and that Borrowers were charged more than "3 [percent] to originate, evaluate, maintain,

record, insure, or service" the debt.  (*Id*. at 4.)  Plaintiff also contends that Defendant violated Texas

Constitution Art. XVI, § 50(a)(6)(Q)(x) because it failed to correct its failures within 60 days after

Borrowers notified it that it failed to comply with its obligations under the Constitution.  (*Id*. at 5.)

Although the statute of limitations is an affirmative defense, a defendant may move for

dismissal under Rule 12(b)(6) if the facts giving rise to this defense "appear[] on the face of the

complaint."  *Simmons v. Local 565 Air Transp. Div. Transp. Workers Union of Am. AFL-CIO*, No.

3:09-CV-1181-B, 2010 WL 2473840, at *4 (N.D. Tex. June 16, 2010) (citing *Kansa Reinsurance*

*Co. v. Cong. Mortgage Corp. of Texas*, 20 F.3d 1362, 1366 (5th Cir. 1994)).

### 1.      *Applicable Limitations Period*

Section 50(a)(6) of the Texas Constitution does not include an express statute of limitations.

*Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 673 (5th Cir. 2013), *cert. denied*, 2013 WL

3193331 (U.S. Oct. 7, 2013).  Texas law provides for a "residual" four-year limitations period that

applies in "[e]very action for which there is no express limitations period, except an action for the

recovery of real property."  Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2008).  In *Priester*,

the Fifth Circuit acknowledged that "the Texas Supreme Court ha[d] not [yet] addressed whether

[the] residual limitations period applies to defects in homestead liens," but intermediate appellate

courts that had addressed the issue had held that it did.  *Priester*, 708 F.3d at 673.  It agreed with the

those courts' reasoning that even "constitutional rights may be subjected to [] time limitations"

because they are "encumbered by the same problems as are other types of claims—they may become

stale as do other claims, and bring with them the associated problems with overdue lawsuits, such

as faded memories, departed witnesses, and misplaced evidence" and concluded that this limitations

period also "applies to constitutional infirmities under Section 50(a)(6)." *Id*. at 673–74 (citations

and internal quotation marks omitted).  The Fifth Circuit rejected the plaintiffs' argument that "no

statute of limitations applies" to "liens created in violation of Section 50(a)(6)" because these are

void *ab initio* rather than voidable. *Id.* at 674. Citing Texas Supreme Court precedent characterizing

such liens as voidable, it found that this characterization was supported by "the constitutional

scheme," since a "void" lien cannot be "voided" by future action, but the "cure provision" of

§ 50(a)(6)(Q)(x) allows home equity loans to be voided at a time after their creation. *Id.* n.4

(citations omitted).

Although *Priester* involved different subsections of § 50(a)(6), federal district courts have

applied its holding to actions under § 50(a)(6)(B) and § 50(a)(6)(E).[4] *See, e.g.*, *Wiltse v. Carrington*

*Mortgage Servs., L.L.C.,* No. 13-10078, 2013 WL 5289063, at *1 (5th Cir. Sept. 20, 2013)(per

curiam)(holding that the plaintiff's argument "that the residual limitations period does not apply"

to actions under §§ 50(a)(6)(B), (E) was "foreclosed by [the Court's] holding in *Priester*."); *Cypert*

*v. USBC Bank USA Nat. Ass'n*, No. 3:13-CV-1032-D, 2013 WL 5822339, at *2 (N.D. Tex. Oct. 30,

2013) (Fitzwater, C.J.); *Underwood v. Wells Fargo Bank, N.A.*, No. CIV.A. H:12-3437, 2013 WL

3788094, at *2 (S.D. Tex. July 18, 2013).   They also applied its holding to actions under

§ 50(a)(6)(Q)(x).  *See Iacobucci v. Wells Fargo, N.A.*, No. 3:13-cv-1425-B, 2013 WL 6061343, at

*3 (N.D.Tex. Nov. 15, 2013); *Blodgett v. BAC Home Loans Servicing, LP*, No. 4:11-cv-00051, 2012

---

[4]  The plaintiffs in *Priester* alleged that their home equity loan violated § 50(a)(6)(M)(i) because the
"closing of the loan occurred in their home rather than at the office of an attorney, the lender, or a title company",
and that it violated § 50(a)(6)(N) because "they did not receive notice of their rights twelve days before closing as
required by the state constitution."  *Priester*, 708 F.3d at 671.

WL 32950, at *4-5 (E.D.Tex. Jan. 6, 2012).  Additionally, the Fifth Circuit has applied its holding

to actions under § 50(a)(6)(E).  *See Moran v. Ocwen Loan Servicing, L.L.C.*, 560 Fed. App'x 277,

279-80 (5th Cir. 2014).  As the court in *Ausmus v. Deutsche Bank Trust Co. Nat. Ass'n,* No. 3:13-cv-

148, 2013 WL 3938515 (S.D. Tex. July 29, 2013) aptly explained, "the language in *Priester* is broad

enough to subject all alleged violations of section 50(a)(6)'s numerous subsections to the residual

limitations period . . . and there is no principled basis for distinguishing the various subsections for

limitations purposes." *Ausmus*, 2013 WL 3938515, at *3 n. 3.  The Court agrees.  Accordingly,

Plaintiff's claims under §§ 50(a)(6)(B), (E), (Q)(x) are subject to Texas's four-year residual

limitations period.

> ### 2.      *Claim Accrual*

The Texas constitution does not "define the accrual date" for purposes of § 50(a)(6).  *Rivera*

*v. Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 840 (Tex. App.—Dallas,  2008, no pet.).  In

*Priester*, the Fifth Circuit first noted that the general rule in Texas, known as the "injury rule," holds

that a "cause of action accrues when a wrongful act causes a legal injury, regardless of when the

plaintiff learns of that injury or if all resulting damages have yet to occur." *Priester*,708 F.3d at 675

(citing *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003)).  It also noted that

the "discovery rule" is a "very limited" exception that "operates to defer accrual of a cause of action

until the plaintiff knows or, by exercising reasonable diligence, should know of the facts giving rise

to the claim."[5]  *Id.* (citing *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734 (Tex. 2001)).

Noting that state and federal district "courts ha[d] applied the injury rule rather than the discovery

---

[5] Texas courts apply the discovery rule only in those cases where the nature of the plaintiff's injury is
"inherently undiscoverable," meaning that "it is nearly impossible for the plaintiff to be aware of his injury at the
time he is injured." *Priester*, 708 F.3d at 676 (citing *S.V. v. R.V.*, 933 S.W.2d 1, 6–7 (Tex. 1996)).

rule in every case in which they ha[d] applied limitations to Section 50(a)(6) violations," the Fifth

Circuit "conclude[d] that the legal injury rule applies to the creation of unconstitutional liens." *Id.*

at 675.  Consequently, it held that a cause of action for violations of § 50(a)(6) accrues on the date

of the "lien's closing," rather than on the date that the plaintiff discovers the violations.[6]  *Id.* at

675–76 (citations omitted).

Here, the lien was created on October 17, 2002.  (doc. 3-1 at 2.)  The copy of the deed of

trust shows that Borrowers closed on the home equity loan on that date, and that the principal loan

amount was $257,000.00.  (*Id.* at 2-3.)  If the loan exceeded 80 percent of the Property's fair market

value on October 17, 2002, then any violation of § 50(a)(6)(B) occurred on that date.  *See*

*Priester*,708 F.3d at 675–76; *Underwood*, 2013 WL 3788094, at *2 (holding that the plaintiffs'

claim under §50(a)(6)(B) accrued on the date of closing; noting that on that date the plaintiffs "knew

whether the loan was more than eighty percent of the fair market value of the home").  Similarly,

if the lender charged more than 3 percent of the principal loan amount for closing costs, any

violation of § 50(a)(6)(E) occurred on that date as well.  *See Priester*,708 F.3d at 675–76; *Lux v.*

*Bank of New York Mellon*, No. 3:13-cv-1697-M, 2014 WL 684972, at *5 (N.D.Tex. Feb. 20, 2014).

The limitations period began to run on that date and expired on October 17, 2006.

As to Plaintiff's contention that Borrowers sent Defendant written notice pursuant to

§50(a)(6)(Q)(x) of its failure to comply with the Texas Constitution, it alleges that the notice was

sent on May 19, 2011.  (doc. 1-3 at 4.)  Because it was sent more than four years after the date the

loan closed, it was untimely, and Defendant's failure to respond will not form an independent

---

[6]  The Fifth Circuit further concluded that *Priester* was not "one of those 'rare' instances in which the discovery rule applie[d]" because there was nothing in the transaction "that made the [plaintiffs'] injury undiscoverable" since on the date of closing "they knew that the closing documents were signed in their living room and that they were not given notice of their rights." *Priester*, 708 F.3d at 675–76.

grounds for a claim against Defendant under § 50(a)(6)(B). *See Iacobucci*, 2013 WL 6061343, at

*3; *Blodgett*, 2012 WL 32950, at *4-5.  Because Plaintiff did not file suit until May 4, 2015, any

claim under § 50(a)(6)(B) is time-barred and fails as a matter of law. *See Wiltse,* 2013 WL 5289063,

at *1 (affirming dismissal of plaintiff's claims under § 50(a)(6)(B),(E) as being barred by the four-

year statute of limitations);  *Cypert*, 2013 WL 5822339, at *2 (dismissing with prejudice the

plaintiffs' claim under § 50(a)(6)(B) because it was time-barred). Defendant's motion to dismiss

Plaintiff's claims for violation of §§  50(a)(6)(B),(E), (Q)(x) as time-barred should be granted.[7]

## C.    Constitutionality of Rule 736

Plaintiff alleges that Defendant attempted to foreclose on the Property by filing an

Application of Foreclosure under Rule 736 of the Texas Rules of Civil Procedure.  (doc. 1-3 at 5.)

It contends that Rule 736 denies rights guaranteed by § 50(a)(6), including the ability to file an

answer containing defenses to the deed of trust. (*Id*.)  Defendant contends Rule 736 provides a

borrower with avenues for asserting defenses to foreclosure by permitting the filing of a responsive

pleading asserting various defenses and by permitting an independent lawsuit.  (doc. 3 at 19-20.)

Article XVI, § 50(r) of the Texas Constitution provides that the Texas Supreme Court, "shall

promulgate rules of civil procedure for expedited foreclosure proceedings related to the foreclosure

of liens under Subsection (a)(6) of this section..." Tex. Const. Art XVI, § 50(r).  Texas Rule of Civil

Procedure 736 provides the procedure for obtaining a court order to allow foreclosure of a lien

containing a power of sale in a security instrument, including a lien securing a home equity loan

under Article XVI, § 50(a)(6) of the Texas Constitution.  Tex. R. Civ. P. 735. 1.

---

[7]Defendant also argues that Plaintiff's claims under Article XVI, § 50(a)(6) are barred by the doctrines of res judicata and collateral estoppel.  (doc. 3 at 16-18.)  Because Plaintiff's claims under  Article XVI, § 50(a)(6) are otherwise subject to dismissal, it is unnecessary to reach this argument.

An application for an expedited order allowing the foreclosure of such a lien must list both the petitioner and respondent. *Id*. § 736. 1. The petitioner is any person legally authorized to prosecute the foreclosure, and the respondent is "each person obligated to pay the loan agreement, contract, or lien sought to foreclosed and each mortgagor, if any, of the loan agreement, contract, or lien sought to be foreclosed. *Id*. A respondent may file a response contesting the application, but must affirmatively plead: (1) why the respondent believes a respondent did not sign a loan agreement document, if applicable, that is specifically identified by the respondent; (2) why the respondent is not obligated for payment of the lien; (3) why the number of months of alleged default or the reinstatement or pay off amounts are materially incorrect; (4) why any document attached to the application is not a true and correct copy of the original; or (5) proof of payment in accordance with Rule 95. *Id*. § 736.5. A response may not state an independent claim for relief, but the respondent may initiate an independent proceeding that puts at issue any matter related to the subject loan or lien. *Id*. If the respondent chooses to initiate an independent action, the Rule 736 proceeding is automatically stayed. *Id*. § 736.11.

According to the state court petition, Plaintiff is not the borrower or the mortgagor or otherwise obligated to pay the loan. (*See* doc. 1-3 at 4.) Plaintiff would not have been a proper party to an expedited foreclosure proceeding under Rule 736, and it would not have been entitled to file an answer to the proceeding. *See* Tex. R. Civ. P. 736.1. Even if it had been a proper party to the expedited foreclosure proceeding, Rule 736 does not prevent a respondent from asserting a "defense to the Deed of Trust." In fact, Rule 736.5 expressly allows a respondent to plead in a response why the respondent is not obligated for payment of the lien. *See id.* § 736.5. Also, the respondent is permitted to file an independent proceeding to assert any defense or claim relating to

the loan or property at issue (*see* § 736.11), and Plaintiff has done so by filing this action.  Plaintiff's

claim that Rule 736 violates its constitutional rights fails, and Defendant's motion to dismiss this

claim should be granted.

**D.**     **Declaratory Judgment**

Plaintiff seeks relief under the Texas Declaratory Judgments Act, codified in

§§ 37.001–37.011 of the Texas Civil Practice & Remedies Code.  (*See* doc. 1-3 at 6.)  "The Texas

act is a procedural, rather than substantive, provision, and would generally not apply to a removed

action" such as this one.  *See Brock v. Fed. Nat'l Mortg. Ass'n*, No. 4:11-CV-211-A, 2012 WL

620550, at *5 (N.D. Tex. Feb. 24, 2012).  In light of removal, the action may be construed as one

brought under the federal Declaratory Judgment Act (DJA), 28 U.S.C. §§ 2201, 2202.  *See Bell v.*

*Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb.

21, 2012) ("When a declaratory judgment action is filed in state court and is subsequently removed

to federal court, it is converted to one brought under the federal [DJA].").

The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court

of the United States, upon the filing of an appropriate pleading, may declare the rights and other

legal relations of any interested party seeking such declaration, whether or not further relief is or

could be sought."  28 U.S.C.A. § 2201 (West 2010).  The Act "does not create a substantive cause

of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual

controversy arising under other substantive law."  *Metropcs Wireless, Inc. v. Virgin Mobile USA*,

*L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.)

(citations and internal quotation marks omitted).  It is an authorization, not a command, and gives

federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment.  *Id.*

Here, Plaintiff seeks a declaratory judgment that in accordance with Article XVI, § 50(c) of the Texas Constitution, "the deed of trust and lien claimed by defendant on [the Property] is not valid because it does not secure a debt described by [section 50]." (doc. 1-3 at 6.)[8]  As discussed, Plaintiff fails to state a plausible substantive claim for relief or show that a present genuine controversy exists between the parties.  Plaintiff's request for declaratory judgment should be denied.  *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *5–6 (N.D. Tex. Aug. 16, 2011) (Fitzwater, C.J.), *aff'd*, 2013 WL 657772 (5th Cir. Feb. 22, 2013) (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

## IV.   RECOMMENDATION

Defendant's motion to dismiss should be **GRANTED**, and all Plaintiff's claims against it should be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

**SO RECOMMENDED** on this 6th day of January, 2016.

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

---

[8] Defendant did not specifically address this claim in its motion.  Nevertheless, a court may sua sponte dismiss a claim as long as the plaintiff has notice of the court's intention and an opportunity to respond.  *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (citing *Shawnee Int'l., N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984)).  The fourteen-day time frame for filing objections to a recommended dismissal provides the required notice and opportunity to respond.  *See Ratcliff v. Coker*, No. 9:08cv127, 2008 WL 4500321, at *3 n. 1 (E.D. Tex. Sept. 26, 2008).

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

13